UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

CHRIS JOHNS,

    Plaintiff, on behalf of himself
    and all others similarly situated,

Case No. 08 -
Hon.

v.

**Demand for Jury Trial**

BLUE CROSS BLUE SHIELD OF MICHIGAN,
a Michigan non-profit corporation,

    Defendants.
_____/

**MANTESE AND ROSSMAN, P.C.**
Attorneys for Plaintiff
Gerard Mantese (P34424)
gmantese@manteselaw.com
Mark Rossman (P63034)
mrossman@manteselaw.com
David Hansma (P71056)
dhansma@manteselaw.com
1361 E. Big Beaver Road
Troy, MI 48083
(248) 457-9200

**JOHN J. CONWAY, P.C.**
Attorneys for Plaintiff
John J. Conway (P56659)
john@johnjconway.com
645 Griswold St, Ste 3600
Detroit, MI 48226
(313) 961-6525

_____/

    A civil action against Defendant has previously been filed in the United States District Court for the Eastern District of Michigan, were it was given docket number 08-1129, and was assigned to Judge Paul Gadola.

                                        Gerard Mantese (P34424)

**PLAINTIFF'S CLASS ACTION COMPLAINT AND JURY DEMAND**

    Plaintiff, Chris Johns, on behalf of himself, and all others similarly situated, by his

attorneys, Mantese and Rossman, P.C. and John J. Conway, P.C., and for his Class Action Complaint against Defendant, states as follows:

## I.    JURISDICTIONAL ALLEGATIONS

1. Plaintiff is a resident of Macomb County, Michigan, and he resides in this District.

2. Defendant Blue Cross and Blue Shield of Michigan is a Michigan non-profit corporation doing business in the state of Michigan and in this District.

3. All or a part of the wrongful conduct and/or transactions described herein occurred in the State of Michigan, and, more specifically, in this District, where Defendant is located and maintains its headquarters and principal place of business.

4. Jurisdiction is proper in this Court under 29 U.S.C. § 1132(e)(1) and (f).

5. Venue is proper in this District under 29 U.S.C. § 1132(e)(2).

## II.    THE PARTIES

### A.    Plaintiff

6. Plaintiff is and was, at all relevant times, a "participant" or "beneficiary," within the meaning of The Employment Income Security Act of 1974 ("ERISA").

7. Plaintiff is the father and legal guardian of a minor child ("minor child") who suffers from a condition known as autism.

8. The minor child is insured as a dependent under a Blue Cross Blue Shield health plan.

9. However, as set forth herein, Defendant wrongfully refuses to provide or allow for coverage for a scientifically validated and beneficial treatment for the autism from which

2

the minor child suffers.  That treatment is Applied Behavior Analysis ("ABA").

10. Plaintiff has standing to bring these claims.  Indeed, Defendant, in denying Plaintiff coverage, specifically stated that Plaintiff has the right to "bring an action under section 502(a) of the Employee Retirement Security Act of 1974."

**B.     Defendant Blue Cross Blue Shield of Michigan**

11. Defendant Blue Cross and Blue Shield of Michigan ("Defendant," "Blue Cross," or "BCBSM") is a Michigan non-profit corporation with its corporate headquarters located in Detroit, Michigan.

12. At all relevant times, Defendant acted as a third-party claims administrator for various self-funded employee benefit plans (the Plans).

13. At all relevant times, Defendant also acted as provider and administrator of various third-party funded employee benefit plans (the Plans).

14. Defendant is a fiduciary, as defined by ERISA, as it was responsible for determining the eligibility of participants and beneficiaries for benefits under the Plans.

15. Accordingly, Defendant is an ERISA fiduciary under 29 U.S.C. § 1002(21)(A).

16. In a manner common to all of the class members, Defendant has refused to provide coverage under the Plans for a treatment known as ABA, which provides significant benefits to children and families suffering from autism.

17. It is believed that Blue Cross has established and carried out a company-wide policy to deny all claims for ABA treatment, even though it knows that the terms of its Plans mandate coverage for the treatment.

18. Defendant's refusal to provide coverage for ABA under the Plans is in violation of the Plans and constitutes a violation of its fiduciary duties to Plaintiff and a class

3

of persons similarly situated.

### III.  OVERVIEW OF AUTISM AND APPLIED BEHAVIORAL ANALYSIS ("ABA")

#### A.  Characteristics And Symptoms Of Autism

19.  Autism is a complex developmental disability, which adversely affects, *inter alia*, verbal and nonverbal communication and social interactions, a child's educational performance, and the overall ability of a person who suffers from the condition to function in society.

20.  Without proper care, treatment, and therapy, autism can be a debilitating and entirely disabling condition, leading people to grow into adulthood without the ability to perform the most basic of functions.

21.  The medical community has recognized that autism is one of five pervasive developmental disorders.

22.  Pervasive developmental disorders are a category of neurological disorders characterized by severe impairment in several areas of development, which generally result in abnormal social interaction and communication, severely restricted interests, and highly repetitive behavior.

23.  Autism is the most common of the pervasive development disorders.

24.  Both autistic children and adults with autism typically show extreme difficulties in communication and social interaction.

25.  Autism begins manifesting itself during infancy or early childhood, and can manifest itself in a variety of ways.

26.  The social impairments of autism usually become apparent in early childhood and continue through adulthood.

27. The characteristic behavior of autistic individuals includes, *inter alia*, impaired social interaction, impaired communication abilities, restricted interests, repetitive behavior, stereotyped movements, resistence to environmental change or change in daily routines, obsessive attachment to objects, decreased motor skills, tantrums, apparent over-sensitivity or under-sensitivity to pain, fearlessness, aloofness, and unusual responses to sensory experiences.

28. Atypical eating behavior is also prevalent among autistic individuals, including selectivity of food choices and eating rituals.

29. Autistic individuals may display a number of forms of repetitive or restricted behavior. These behaviors may include, *inter alia*, the following:

    a. Stereotypy: Apparently purposeless movement;

    b. Compulsive behavior: Intentional, rule oriented behavior;

    c. Sameness: Resisting change;

    d. Ritualistic behavior: Performing daily activities the same way every time;

    e. Restricted behavior: A limitation in focus or interests; and/or

    f. Self-injury: Behavior that can injure the individual, such as biting.

30. Autistic individuals may exhibit the characteristic traits of autism in any combination, and in different degrees of severity.

31. Socially abnormal behavior becomes more pronounced as autistic children become toddlers.

32. Young autistic children are less likely than neurotypical children to make eye contact, to have social understanding, communicate with others, or respond to emotions.

33. Mental retardation is also much more prevalent among autistic individuals than neurotypical individuals.

34. Plaintiff and all members of the class herein defined have dependents who have been diagnosed as having autism.

**B.     Blue Cross Routinely Denies Coverage For A Condition
That Is Afflicting Millions Of People In The United States**

35. It is believed that the growing numbers of autistic children in America today is driving Blue Cross' denial of coverage for treatment of this condition.

36. The prevalence of autism is growing at a high rate throughout the United States and in the State of Michigan.

37. For example, autism is estimated as occurring in every 1 in 150 births nationwide.

38. As many as 1.5 million Americans are believed to have some form of autism.

39. Autism is growing at a rate of 10 to 17 percent per year.

40. Some estimates hold that the prevalence of autism could reach 4 million Americans in the next decade.

41. The prevalence of autism in the United States surpasses that of all types of cancer combined.

42. In Michigan alone, there were an estimated 7,259 autistic children in 2003. This represents a 437% cumulative growth rate of autism from 1992 to 2003.

43. By comparison, the cumulative growth rate for the prevalence of all disabilities in Michigan was only 36%.

44. The average annual growth rate for the prevalence of autism in Michigan was

15% per year from 1992 to 2003.

45.     By denying coverage for the most validated and sound treatment available for this condition, Blue Cross is wrongfully withholding payment for tens of millions of dollars in claims as well as dissuading parents from seeking treatment for their children.

46.     Blue Cross' refusal to cover a child who suffers from autism afflicts the entire family, who must then bear not only the emotional and mental strain of caring for an autistic child, but also financial devastation.

47.     Treatment for an autistic child can cost tens of thousands of dollars per year.

**C.     Overview Of Applied Behavioral Analysis ("ABA"); A Scientifically Valid Treatment For Autism**

**1.      What Is ABA?**

48.     ABA is a scientifically valid and medically accepted treatment for autism, which enables autistic people to learn and perform functions that they would not otherwise be able to accomplish.

49.     Among other things, ABA teaches social, motor, and verbal behaviors, as well as reasoning skills.

50.     ABA treatment uses, among other things, intensive behavioral therapy.

51.     ABA treatment can include any of several established teaching tools.

52.     It is an objective discipline, focusing on the reliable measurement and evaluation of observable behavior.

53.     ABA uses methods that yield convincing, reproducible, and conceptually sensible demonstrations of how to achieve specific behavior changes.

54.     ABA aids autistic children in leading more independent and active lives.

55. This is especially true for children who receive early intervention, which, with respect to the class of persons represented in this suit, is impeded by Blue Cross' egregious denial of coverage.

56. The positive benefits of ABA are less likely if the child does not receive early intervention.

### 2. ABA Has Been Scientifically Validated

57. Studies show that ABA treatment is the most effective approach for treating children with autism.

58. For example, the United States Surgeon General has said that 30 years of research has "demonstrated the efficacy of applied behavioral methods in reducing inappropriate behavior and increasing communication, learning and appropriate social behavior."

59. The New York State Department of Health Early Intervention Program recommends that ABA is an essential element of any intervention program for young autistic children.

60. The Association for Science in Autism Treatment endorses ABA as the only treatment modality with scientific evidence supporting its effectiveness.

61. The State of Michigan's Insurance Commissioner has held, based on independent medical examinations, that ABA is a reasonable, safe, and necessary treatment for children with autism.

62. The State of Michigan's Insurance Commissioner has repeatedly held that ABA is *not* an experimental treatment.

63. Intense behavioral intervention for children with autism is the standard of care

as recommended by the American Academy of Pediatrics and is an appropriate therapeutic management of autism.

64. ABA treatment is a scientifically valid component of behavioral intervention.

65. On March 21, 2008, the State of Arizona passed legislation requiring insurers to cover ABA treatments for people with autism.

66. Reputable ABA treatment and training is available in Michigan from facilities managed and staffed by clinicians with considerable education, certifications, and training in ABA techniques.

67. The programs offered by these facilities are by no means experimental or investigative.

68. Similar programs are administered around the country in similar circumstances and under similar conditions.

69. One such program in Michigan is the "HOPE" program at Beaumont Hospital's Center for Human Development, in which Plaintiff's child has participated, and for which BCBSM has not provided coverage.

70. HOPE, like other programs in which the class members have participated, provides autistic children with scientifically validated medical treatments tailored to the child's particular needs and diagnosed condition.

71. Despite the State of Michigan's finding that ABA is not an experimental treatment, Defendant denies coverage to Plan beneficiaries for ABA treatment in violation of ERISA and the relevant provisions of the Plans.

72. Indeed, Blue Cross refuses to provide coverage for therapy and treatment given to Plaintiff's child, and children in like circumstances throughout the State of

Michigan.

73. Blue Cross' wrongful refusal to provide coverage has caused financial damages to members of the class, who have either had to pay for the care themselves or were unable to receive care that should have been covered.

### IV. CLASS ACTION ALLEGATIONS

74. Plaintiff brings this action as a class action against Defendant pursuant to Rule 23 of the Federal Rule of Civil Procedure, individually and on behalf of a class consisting of all persons who are participants in or beneficiaries of an employee benefit plan administered by or provided by Defendant and who have been denied coverage for ABA treatment to an insured person diagnosed with autism.

75. The class period commences six years prior to the filing of this Complaint through the date of the entry of a final judgment.

76. Plaintiff is a member of the class and will fairly and adequately assert and protect the interests of the class.

77. The interests of the Plaintiff are consistent with, and not antagonistic to, those of the other members of the class.

78. Plaintiff has retained attorneys who are experienced in class action litigation, and who will provide adequate representation.

79. Members of the class are so numerous that joinder of all members of the class is impracticable.

80. Upon information and belief, there are thousands of members of the class whose identities can be ascertained from the records and files of Defendant and from other sources.

81. Common questions of law or fact as to the violations by Defendant of ERISA that have caused and will continue to cause harm to the class predominate over any question affecting only individual members of the class.

82. The prosecution of separate actions by individual members of the class would create a risk of, among the other things, the following:

> a. Inconsistent or varying adjudications with respect to individual members of the class; and
>
> b. Adjudication with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

83. The claims of the lead Plaintiff are typical of the claims of the class, and the class action method is appropriate for the fair and adequate prosecution of this action.

84. Individual litigation of claims which might be commenced by all class members would produce a multiplicity of cases such that the judicial system having jurisdiction of the claims would remain congested for years.

85. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of Defendant.

86. The certification of a class would allow litigation of claims that, in view of the expense of litigation, may be insufficient in amount to support separate claims.

87. Accordingly, Plaintiff brings this action on behalf of himself and on behalf of all other members of the class defined as follows:

> All plan participants and beneficiaries insured under ERISA-governed employee benefit plans administered by Blue Cross and Blue Shield of Michigan who have been denied coverage for ABA treatment within the last

six years.

Excluded from the class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as officers, directors, agents, servants or employees of Defendants, and the immediate family member of any such person. Also excluded is any judge who may preside over this case.

## V. **DEFENDANT'S VIOLATIONS OF ERISA**

88. ERISA requires every employee benefit plan to provide for one or more named fiduciaries who will have "authority to control and manage the operations and administration of the Plan" [29 U.S.C. § 1102(a)(1)].

89. The employers of the Plaintiff and class members delegated their fiduciary responsibilities for claims administration to Defendant.

90. At all relevant times, Defendant was a fiduciary within the scope of ERISA by virtue of its exercise of discretionary authority, control and responsibility over the design, implementation and administration of the Plans.

91. As a matter of policy, Defendant has wrongfully denied Plaintiff, the class members, and their dependants coverage for ABA treatment.

92. Defendant wrongfully denies coverage on the bad faith basis that it is "experimental" or "investigative," despite the multitude of studies showing, among other things, the efficacy of ABA treatment and repeated rulings by the State of Michigan's Insurance Commissioner that ABA is a reasonable, safe, and necessary treatment for children with autism.

93. Defendant has also wrongfully denied coverage of ABA on other baseless grounds, including intentionally misconstruing the terms of the Plans.

94. Defendant has failed to provide any explanation or evidence in support of its

claim that ABA treatment is experimental, investigative, or otherwise not covered under the Plans.

95. Defendant's failure to provide evidence in support of its position constitutes a failure to provide full and fair review of the decision to deny benefits, in violation of ERISA [29 U.S.C. § 1133(2)].

96. By administering the Plans in the manner described in this Complaint, Defendant has failed to exercise the utmost loyalty and care of a prudent person engaged in similar activity under prevailing circumstances, in violation of ERISA.

97. Plaintiff has exhausted all of his administrative remedies, and, given Defendant's policy and practice of denying coverage for ABA, it would be futile for the remainder of the class to exhaust their administrative remedies.

## COUNT I -
## ACTION AGAINST DEFENDANT UNDER
## 29 U.S.C. § 1132(a)(1)(B) TO RECOVER FULL HEALTH CARE BENEFITS

98. Plaintiff realleges all preceding allegations.

99. Plaintiff, the class and their dependents have been continuously covered under health insurance policies purporting to provide health care coverage for covered medical expenses under the Plans.

100. Plaintiff, the class and their dependents are entitled to benefits upon supplying proof of a claim incurred under a Plan.

101. Defendant has repeatedly denied coverage for covered medical expenses, specifically, ABA treatment.

102. Defendant has failed to properly interpret its own plan language and denied covered health care benefits, despite satisfaction of the Plans' eligibility requirements.

103. Plaintiff, the class and their dependants are, and have always been, entitled to health care benefits under the Plans.

104. Defendant's denial on the ground that the treatment was experimental or investigative is a violation of the Plan and ERISA.

105. Defendant's denial on the ground that the ABA treatment was otherwise not encompassed by the terms of the Plan is a violation of the Plan and ERISA.

106. Defendant's decision to deny benefits was incorrect and unreasonable.

107. Accordingly, Plaintiff and the class members are entitled to immediate payment of past due benefits, and they are also entitled to clarify and enforce their rights to payment of future benefits through the entry of an injunction.

## COUNT II –
## ACTION AGAINST DEFENDANT UNDER
## 29 U.S.C. § 1132(a)(2) FOR BREACH OF FIDUCIARY DUTY

108. Plaintiff realleges all preceding paragraphs.

109. ERISA requires Defendant to discharge its fiduciary duties with respect to a plan solely in the interest of the participants and beneficiaries and with utmost, undivided loyalty to their interests.

110. Defendant has breached its fiduciary duties by wrongfully denying coverage for ABA treatment, as well as by operating the plan in a manner inconsistent with Plan and ERISA.

111. Specifically, Defendant has implemented a plan-wide system of denying coverage, without providing beneficiaries and participants a full and fair review, in violation of their fiduciary duties.

112. Defendant's actions have caused harm to the plan by reducing the amount

of benefits available under the plan.

113.   Accordingly, Plaintiff and the class members are entitled to such equitable and remedial relief as this Court deems appropriate.

## COUNT III –
## ACTION AGAINST DEFENDANT UNDER
## 29 U.S.C. § 1132(a)(3) FOR EQUITABLE RELIEF

114.   Plaintiff realleges all preceding paragraphs.

115.   ERISA requires Defendant to discharge its fiduciary duties with respect to a plan solely in the interest of the participants and beneficiaries and with utmost, undivided loyalty to their interests.

116.   Further, ERISA requires that Plaintiff and the class members be afforded a reasonable opportunity for a full and fair review of the decision denying them benefits.

117.   Defendant's actions as set forth above are in violation of the ERISA statute and the relevant Plans.

118.   By refusing to provide coverage for ABA treatment to covered beneficiaries, Defendant continues to breach its fiduciary duties to Plaintiff and the class members.

119.   Further, by failing to provide evidence or an explanation for its determination that ABA treatment is experimental, Defendant is denying Plaintiff and the class members an opportunity for a full and fair review.

120.   As a result of the breaches of fiduciary duty described above, Plaintiff and the class members have been harmed, continue to be harmed, and will be harmed in the future, due to the acts or omissions detailed above.

121.   Therefore, Plaintiff and the class members are entitled to (1) an order enjoining Defendant from denying coverage for ABA treatment in violation of ERISA and

the Plans, and (2) other appropriate equitable relief necessary to redress Defendant's violations and to enforce the law and the Plan.

WHEREFORE, Plaintiff and the class request judgment in their favor against Defendant in an amount to be determined, plus costs, interest and attorneys' fees, exemplary damages, declaratory and injunctive relief, and any other relief to which Plaintiff and the class is entitled.

        Respectfully Submitted,
        **MANTESE AND ROSSMAN, P.C.**
        Attorneys for Plaintiff

By:   s/Gerard V. Mantese
       Gerard V. Mantese (P34424)
       gmantese@manteselaw.com
       Mark C. Rossman (P63034)
       mrossman@manteselaw.com
       David S. Hansma (P71056)
       dhansma@manteselaw.com
       1361 E. Big Beaver Road
       Troy, Michigan 48083
       (248) 457-9200

       **JOHN J. CONWAY, P.C.**
       Attorneys for Plaintiff
       John J. Conway (P56659)
       john@johnjconway.com
       645 Griswold St, Ste 3600
       Detroit, MI 48226
       (313) 961-6525

Dated: May 23, 2008

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

                Respectfully Submitted,
                **MANTESE AND ROSSMAN, P.C.**
                Attorneys for Plaintiff

By:   s/Gerard V. Mantese
       Gerard V. Mantese (P34424)
       gmantese@manteselaw.com
       Mark C. Rossman (P63034)
       mrossman@manteselaw.com
       David S. Hansma (P71056)
       dhansma@manteselaw.com
       1361 E. Big Beaver Road
       Troy, Michigan 48083
       (248) 457-9200


**JOHN J. CONWAY, P.C.**
Attorneys for Plaintiff
John J. Conway (P56659)
john@johnjconway.com
645 Griswold St, Ste 3600
Detroit, MI 48226
(313) 961-6525

Dated: May 23, 2008