```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3   CHRIS JOHNS,                      Case No. 08-12272
                                       U.S. Magistrate Judge
 4        Plaintiff,                   Michael J. Hluchaniuk
                                       Flint, Michigan
 5           v                         June 17, 2009
                                       2:44 p.m.
 6   BLUE CROSS BLUE SHIELD OF
     MICHIGAN,
 7
          Defendant.
 8   _____/

 9   Ordered By:                       U.S. MAGISTRATE JUDGE
                                       MICHAEL J. HLUCHANIUK
10
                             SETTLEMENT HEARING
11
     APPEARANCES:
12
     For the Plaintiff:                GERARD MANTESE, ESQ. (P34424)
13   (By Phone):                       Mantese & Rossman
                                       1361 E. Big Beaver Road
14                                     Troy, MI   48083
                                       248-457-9200
15
     For the Defendant:                K. SCOTT HAMILTON, ESQ.
16   (By Phone):                       (P44095)
                                       Dickinson, Wright
17                                     500 Woodward Avenue
                                       Suite 4000
18                                     Detroit, MI 48226-3425

19   Court Recorder:                   Jennifer Chase

20   Transcriber:                      Deborah Kremlick

21


22


23
     Proceedings recorded by electronic sound recording, transcript
24   produced by transcription service.

25
```

```
 1       (Court in Session)
 2            THE CLERK:  All rise.  Court is now in session.  The
 3  Honorable Magistrate Judge Michael Hluchaniuk presiding.
 4            THE COURT:  I said I'd give you a copy of that, to
 5  both sides.
 6            THE CLERK:  You may be seated.  The Court will now
 7  hear -- I'm sorry, Judge.
 8            THE COURT:  I interrupted you, I'm sorry, so --
 9            THE CLERK:  The Court will now hear civil case Johns
10  versus Blue Cross Blue Shield.
11            THE COURT:  Good afternoon.  On the record --
12            THE CLERK:  If you could turn the speaker system up.
13            THE COURT:  Good afternoon, gentlemen.  On the
14  record, we are here at this moment to put the terms of the
15  agreement that has been reached today in this matter on the
16  record.
17       And first of all, I want to thank the parties and the
18  lawyers for engaging in these negotiations in a practical,
19  realistic, and cooperative manner.  And I think we have
20  reached an agreement which is fair to both sides and serves
21  the interest of justice overall and I thank you for your
22  cooperation and your efforts in resolving this matter.
23       It is my understanding that this will be, except for the
24  -- the remaining issues relating to the establishment and the
25  certification of the class, and whatever the mechanical
```

```
 1  process will be that's associated with that.  This will be the
 2  final judgment and the -- the final terms of the agreement
 3  between the parties in this matter.  Mr. Mantese, do you agree
 4  with that?
 5           MR. MANTESE:  Yes, Your Honor.
 6           THE COURT:  Mr. Hamilton, do you agree with that?
 7           MR. HAMILTON:  That's my understanding, yes.
 8           THE COURT:  All right.  What I'm going to do is work
 9  from the draft that the plaintiffs had prepared in this matter
10  and make modifications as are necessary to completely and
11  accurately incorporate the agreement of the parties.
12       And I will certainly ask for the -- any corrections or
13  changes that need to be made so that the record will be
14  absolutely clear as to the terms before we leave today.  And
15  I'm just going to start reading from the beginning of the
16  document that plaintiffs had prepared in this matter.
17       The parties having entered into settlement negotiations
18  to resolve this litigation, and the parties having agreed to
19  the terms below for consideration by the Court, it is hereby
20  agreed as follows:
21       One, plaintiff will file a motion with the Court seeking
22  certification of this case as a class action on the terms set
23  forth below and defendant will not oppose such certification
24  according to the terms set forth below.
25       Paragraph 2, Blue Cross Blue Shield of Michigan agrees to
```

1  pay all applied behavior analysis claims, and applied behavior
2  analysis will be referred to throughout the document as ABA,
3  so they will pay, that is Blue Cross Blue Shield of Michigan,
4  will pay these claims for the period beginning May 1st of 2003.
5  And that will encompass as a group, and I'm varying from the
6  written document, any eligible claimant who is currently
7  enrolled in the program at Beaumont Hospital.
8       And the program that we're referring to is -- we're going
9  to call the gift program.  I think that's clear to the parties
10 and everyone else.
11      So, Blue Cross Blue Shield of Michigan agrees to pay for
12 any individual who has obtained treatment through this program
13 at Beaumont Hospital up to and including -- well, beginning
14 with May the 1st of 2003, and up to and including any eligible
15 claimant who is currently in the program as of today's date.
16 And that payment will include assessment and diagnosis at the
17 Center for Human Development at Beaumont.  Claims will be paid
18 both for insured and self funded plans.
19      Blue Cross Blue Shield of Michigan agrees to pay for ABA
20 of such actual claims that were submitted and denied.
21 Plaintiff will seek and defendant will not oppose
22 certification of a class of persons consisting of all persons
23 who had such claims denied as well as other persons that will
24 be identified in Paragraph 3 as of -- as of today's date as we
25 explained earlier.

```
 1        Blue Cross Blue Shield of Michigan will provide an

 2   affidavit of its general counsel verifying that the above

 3   claims for treatment at Beaumont Hospital comprise all the

 4   claims for ABA therapy that were submitted to Blue Cross Blue

 5   Shield of Michigan during the covered period.

 6        Paragraph 3.  Blue Cross Blue Shield of Michigan will

 7   also pay for any ABA therapy rendered at the gift program at

 8   William Beaumont Hospital for the same period that we

 9   discussed earlier whether or not the insured submitted a claim

10   with Blue Cross Blue Shield of Michigan and -- and the

11   assumption underlying this category is that the applicants

12   would otherwise be eligible for coverage.

13        So our class, our defined class, and again I'm sort of

14   paraphrasing off the written document here, will be people who

15   have either made a claim and had that claim denied for the

16   relevant time period, or would be eligible for coverage had

17   they made a claim but for one reason or another did not make a

18   claim.

19        Paragraph 4.  Nothing contained in this agreement is

20   intended to, or shall in any way reduce, eliminate, or

21   supersede, any obligation to comply with applicable provisions

22   of relevant state and federal law and regulation.

23        Paragraph 5.  Plaintiff will prepare a motion seeking

24   final approval and final settlement by July the 1st, 2009.

25        Paragraph 6.  This settlement will in no way affect any
```

```
 1   claims that anyone might have arising out of Blue Cross or
 2   Blue Shield of Michigan's failure to pay for treatment at
 3   Beaumont Hospital's care program.  And that Blue Cross and
 4   Blue Shield will pay a total of $250,000 that will include
 5   attorney's fees and any incentive fees that would be received
 6   directly by the plaintiff in this matter.  Any other terms or
 7   conditions that would be part of the judgment that I have not
 8   mentioned so far?
 9             MR. MANTESE:  Your Honor, the incentive fee will be
10   $3,000.  And therefore the attorney's fees and costs are
11   $247,000.
12        With respect to Paragraph 2, Your Honor, I guess the
13   including patient assessment clause should have read,
14   including but not limited to patient assessment and diagnosis.
15   Because the way it read it might have sounded as if the actual
16   therapy wasn't covered.  And I know that's not what we
17   intended.
18        And then the final thing, Your Honor, was that the notice
19   to the class will be by Blue Cross sending direct mail.  They
20   have the names of the people who submitted a claim and were
21   denied.  They will work with Beaumont to get the names of the
22   people who never submitted a claim and they'll take care of
23   the mailing and certify to the Court that they've done so and
24   bear the costs of that administrative cost.  With those
25   clarifications, Your Honor, we have nothing further.
```

```
 1            THE COURT:  All right.  Just to clarify one point.
 2  And that is that the $247,000 in attorney's fees is inclusive
 3  of past and future attorney's fees associated with either past
 4  services rendered and future services that may be necessary to
 5  complete this matter.
 6            MR. MANTESE:  That's correct, Your Honor.
 7            THE COURT:  All right.  Mr. Hamilton, any
 8  corrections or additions that you would care to make to what
 9  has been stated on the record so far?
10            MR. HAMILTON:  I don't think anything is misstated,
11  but I want to make sure that there's -- there's no unclarity.
12  With respect to the claims that are being paid for those
13  persons that have never submitted a claim to Blue Cross, we
14  want to make sure that it's clear that payment will be made
15  only to those persons that got ABA treatment were covered by
16  Blue Cross Blue Shield of Michigan as opposed to some other
17  Blue Cross entity or some other insurer.
18            THE COURT:  Okay.  I think that was understood, but
19  there's no harm in clarifying the record even further on that
20  point.
21            MR. HAMILTON:  I also want to make clear that we
22  will not oppose any motion seeking certification of a
23  settlement to class which may or may not be different than
24  seeking certification of this action as a class action.  What
25  we need to do and make clear is, this is a settlement class
```

```
 1  that is being proposed and it's being resolved on that basis.
 2              THE COURT:  Mr. Mantese, any --
 3              MR. MANTESE:  That's correct, Judge.
 4              THE COURT:  All right.
 5              MR. HAMILTON:  The provision that was read dealing
 6  with an affidavit of the general counsel, I can't say that
 7  that is something that we've agreed to today because I don't
 8  know that that person would have knowledge and would be in a
 9  position to make that certification.  But I would say that it
10  would be subject to some other acceptable confirmation of the
11  numbers that we're talking about.
12              MR. MANTESE:  That's fine, Your Honor.
13              THE COURT:  All right.  So that the actual signatory
14  and the -- the affidavit or certification is not critical as
15  long as it's someone with knowledge of the information that's
16  relevant to that.
17              MR. MANTESE:  That's correct, Your Honor.  It should
18  be someone with -- probably someone with -- with the most
19  personal knowledge of the issue would be fine.  It doesn't
20  have to be a general counsel.
21              THE COURT:  All right.
22              MR. HAMILTON:  And then lastly -- two last things
23  actually.  With respect to the administrative procedure, we
24  have agreed that we will provide the names of those that we
25  know submitted claims to Blue Cross Blue Shield of Michigan
```

```
 1  and that we can obtain from Beaumont Hospital, or will attempt
 2  to obtain from Beaumont Hospital, a list of those persons that
 3  received ABA therapy in the time frame that we're talking
 4  about and then provide a list of the individuals of that group
 5  that were covered by Blue Cross Blue Shield of Michigan
 6  insurance or other self funded plans.
 7       We can provide that to plaintiff.  I don't think that we
 8  have agreed to undertaken actually supplying class notes.  I
 9  believe that that's probably something that the plaintiff
10  ought to be responsible for.  But we will provide the
11  identification and contact information for those individuals
12  that were Blue Cross participants or beneficiaries.
13            THE COURT:  All right.  Well, let's make sure we
14  don't have a disagreement on that.  Mr. Mantese, you of course
15  heard what Mr. Hamilton said.
16            MR. MANTESE:  Yes, Your Honor.
17            THE COURT:  And basically as I understood it, he was
18  saying that the -- the names of these potentially eligible
19  individuals to be members of this class will be provided to
20  the plaintiff and the plaintiff will actually affect notice?
21            MR. MANTESE:  That's fine, Your Honor.  That's fine.
22            THE COURT:  All right. And one thing that I think
23  was discussed with both sides, but may not have been clarified
24  on the record today.  And that is that those people who are
25  currently in the program who may not complete the program by
```

1 the time the judgment will be entered in this matter, will be

2 paid fully for their -- for their therapy and treatment they

3 received in the program.

4     That is if the judgment is entered on say July the 15th

5 for example, just for hypothetical purposes, and -- and those

6 individuals enter into a three month therapy program starting

7 today, it doesn't matter when they end in relation to the

8 entry of the judgment, they'll be paid in full.  Mr. Hamilton,

9 is that accurate?

10         MR. HAMILTON:  That's -- that's exactly my

11 understanding as well.  As long as -- as of today they are in

12 the program, those -- those services will be reimbursed to

13 cover it.

14         THE COURT:  And today being, just so that it's

15 clear, June the 17th, 2009.  Mr. Mantese, is that --

16         MR. MANTESE:  I agree with that, Your Honor.

17         MR. HAMILTON:  The only remaining thing, Your Honor,

18 and we discussed this in chambers and I assume that it was

19 discussed with plaintiff's counsel, is that we have agreed

20 that there will not be any media contact or disclosure of the

21 terms for at least a 48 hour period to allow Blue Cross to

22 discuss internally these matters.  That there won't be any

23 contacting, press releases, or publication at least -- for at

24 least that period of time.

25         THE COURT:  I hadn't forgotten that.  I was going to

 1  mention it, but I'm glad you brought it up.  Mr. Mantese, you
 2  have indicated previously that you're willing to agree with
 3  that?
 4          MR. MANTESE:  That's fine, Your Honor.
 5          THE COURT:  It's not a provision of the judgment,
 6  but it's just an understanding that goes along with the
 7  agreement that we've reached today.
 8          MR. MANTESE:  Yes.
 9          THE COURT:  All right.  Having stated all this on
10  the record, Mr. Mantese, it's your intention to be bound by
11  the terms of this agreement to complete this resolution.
12          MR. MANTESE:  Yes, Your Honor.
13          THE COURT:  All right.  May I direct a question to
14  your client?
15          MR. MANTESE:  Yes, Your Honor.
16          THE COURT:  Mr. Johns, you have been present during
17  the discussions that have taken place, the settlement
18  negotiations plus the comments that we've made in Court today.
19  And you agree personally with everything that your lawyer has
20  said today about resolving this case?
21          MR. JOHNS:  Yes.
22          THE COURT:  All right.  Mr. Phillips representing
23  Blue Cross Blue Shield, you also have been present during the
24  negotiations that have taken place today, been in Court today
25  when we've commented on the terms of the settlement and you

1 intend to bind Blue Cross Blue Shield to the terms of this

2 agreement based on what we said today in Court?

3             MR. PHILLIPS:  Yes, Your Honor.

4             THE COURT:  All right.  Anything else we need to put

5 on the record?

6             MR. MANTESE:  Can we just have Mr. Hamilton also

7 confirm, Your Honor?

8             MR. HAMILTON:  Absolutely.

9             THE COURT:  I thought he said that earlier, but I'll

10 certainly reiterate that again and on behalf of your client

11 Blue Cross Blue Shield of Michigan, you agree to these terms?

12            MR. HAMILTON:  Yes, yes.

13            THE COURT:  All right.  Do -- do we need to prepare

14 a transcript of today's hearing so that the comments we've

15 made today will be clear to both sides?

16            MR. MANTESE:  Probably a good idea.

17            MR. HAMILTON:  Yeah, just so there's no unclarity.

18            THE COURT:  All right.  I'll arrange for that to be

19 accomplished and copies of that transcript will be sent to

20 both sides of the case.

21            MR. MANTESE:  Thank you, Your Honor.

22            THE COURT:  Anything further?

23            MR. HAMILTON:  All right.  Thank you for your -- for

24 your efforts, it's greatly appreciated.

25            THE COURT:  More than happy to -- to resolve the

1 matter.  Again it's a pleasure working with good lawyers who
2 are willing to address matters in a professional way and the
3 parties who are willing to compromise their interest to
4 achieve an equitable and fair result in this matter.  So thank
5 you all.
6             MR. MANTESE:  Thank you, Judge.
7        (Court Adjourned at 2:58 p.m.)

```
 1
 2
 3
 4
 5
 6
 7  I certify that the foregoing is a correct transcript from the
 8  electronic sound recording of the proceedings in the
 9  above-entitled matter.
10
11  /s/Deborah L. Kremlick, CER-4872          Dated: 7-6-09
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```